Second case is appeal number 13-1347, Bose Corp. v. SDI. This case comes up on a summary judgment of non-infringement that was decided against Bose. The technology here involves remote-controlled audio systems that connect to devices like iPods. The technology here involves remote-controlled audio systems that connect to devices like  This case comes up on a summary judgment of non-infringement that was decided against  The technology here involves remote-controlled audio systems that connect to devices like Does the examiner file a response to your request for re-hearing? I don't believe so. I'm not certain of that, but I don't believe so. Okay. So there are two claim construction issues I'd like to discuss. First, there's the term interface, and then the related term interface unit module device. Based on these constructions, the district court entered summary judgment of non-infringement as to 143 of the 144 accused products. Both of those constructions are incorrect, and they provide independent grounds for reversing summary judgment. You have to prevail on both, right? No, we have to prevail on either. Either. They're both independent grounds for reversing summary judgment. If we win on either of those terms, then the judgment cannot stand. And finally, I'd like to discuss the intent issues related to indirect infringement as to both contributory and inducement, which led to summary judgment on the 144th product. So for the construction of the term interface, the district court came up with a very narrow construction, which is incorrect since it requires the interface to include a digital to analog converter. The district court's main error was based on Apelli's deliberate misreading of the prosecution history, which the district court adopted. The court said both added and defined the term interface in their office action reply. Now, the relevant portion of the reply is at pages 282 through 86 of the appendix. You can scour that reply. There is nothing in it that could remotely be characterized as defining the interface as including a digital analog converter. The term interface was added at the time to the claim along with other limitations, but the interface term was not the basis for the argument of patentability. Instead, the argument was based entirely on adding the remote control. The interface was simply added as a conduit or a pathway to provide a signal path for the remote control signal and to operatively couple the audio source device with the speaker. There's some evidence in there, as well as the spec, that there's a difference between the term interface versus connector though, right? The spec uses the term interface unit with respect to one of the embodiments, the figure two embodiment, and it doesn't use that term with respect to the figure one embodiment. Is the term interface used anywhere in the spec other than with respect to figure two? It's used in different contexts. Exactly. If I did a word search, I'll find it. For interface alone, you wouldn't. Just interface, you won't. Right. Only referenced with regard to figure two. So the interface unit is referred to, is linked to figure two. The term interface is used in connection with other, there's like a user interface, which is the display. There are several other uses of the term interface in connection. In the spec or in the claims? In the spec. In the spec. So there's an interface connector, which is identified the same component actually appears in both figure one and figure two. Before we go any further. Where is the interface connector in figure one? I know you argue that in figure one, items 51 and 49, which are analog and digital switches or plugs, you argue that that's the interface. And I don't understand why. So it's the interface because it performs the function of the interface. The claim includes a functional requirement for what the interface has to do. I'm looking at little, the argument that's been made that everybody seems to recognize is that the interface is 33 in figure one, where the digital signal is converted to an analog signal. So the interface would be, so 53 would be there. How do 51 and 49 perform the conversion? Why are they an interface? So there is no digital to analog conversion in the interface of figure one. And that's why the interface term should not require a digital to analog conversion. But you argue in your brief that 51 and 49 together constitute an interface. And you say that, and I can tell you where you say it. Yes. You only explain why. Because it meets the functions of the interface. It performs the functions that are required by the claim. It transmits the signals back and forth. It operatively couples the two devices. So it's just a connector? It is a connector, yes. So that's all it is? What's the difference between a connector and an interface? So a connector can be a type of interface. All the interface has to do here is transmit the commands back and forth, the audio in one direction and the control signals in the other direction. There's no requirement. Are there connectors that don't do that? I'm struggling here with what kind of construction of interface to come up with that's not connector. So we have an alternate construction of interface, which is essentially district court's construction without the digital to analog converter. So that's a construction of interface as well. Right. And I couldn't understand what was going on below. It looked like below in front of Judge Young, your proposed claim construction for interface was connector. A connection. A connection. Initially, yes. So any terminal would be a connector, would be an interface. Yes. And he rejected that. Yes, he did. And then he went the other way. He had to pick one or the other, and he picked the other. He picked theirs, yes. And then you requested rehearing where? Reconsideration. Reconsideration after two years of fighting for connector. No, I think it was two years. Okay, well, two years after you filed your complaint. Okay. You had your theory of whatever an interface meant. Yes. And now, a month after the Markman order, you come up with a brand new theory of what interface means. And what did he do with that? He denied the motion for reconsideration. The argument that we had always made right from the beginning was that the interface need not include a digital-to-analog converter. And so that is the error that we saw in the construction he adopted from the other side. This was the cornerstone of their construction. We opposed it in the Markman briefing. When he adopted that, we proposed a second construction, which includes the two signal paths, but doesn't include the digital-to-analog converter. My question is, is that too late? You had your shot to propose your claim construction. It's not. I don't think it is. Under Exxon, the district court has to come up with the correct claim construction. It's not a matter of picking one or the other if neither of those are correct. So the district court still has the obligation to come up with the correct claim construction. And the inclusion of the digital-to-analog converter in the claim was incorrect. So that should have been taken out. Well, I guess one of the problems I have with your construction or proposed construction that it can be a connector is that in figures 1 and 2 and 3, there's all these elements, like on the right-hand side of the computer, 34, 38, 42, 46, 43.  And then elements 51 and 49 that you're trying to rely on are terminals. And then when the spec finally gets around to designating something as an interface, it's interface unit 54. Right, so the spec doesn't describe... To me, the spec and the figures together arguably make clear that interface, whatever that term means, it's not just a connector. So the term interface isn't used in connection with either figure 1 or figure 2. Interface unit. Interface unit is used in connection with figure 2. There's no requirement that you match up word for word what's described in the specification and what's in the claim. This court actually rejected that approach in the Pozen versus Parfarma case that we cited. That was in the written description context. What happens if your music-playing device, iPhone or whatever it is, doesn't convert as a digital signal? So the interface doesn't have to have... Well, it isn't going to work, right? Unless you're going to convert the signal, then when they plug it into your dock, it isn't going to work. Right, so the speaker has to put out analog audio. That's correct. So the invention won't work unless there's a digital-to-analog converter. Unless, right. Unless you're talking about playing digital music. At some point in the system, right. Now it can be in the computer as it is with the sound card, or it can be in an interface. But what happens if it's not in the computer? It could be... Your product is worthless. Well, it could be in the sound card. I mean, if you plug in... You have a device like the device that is for the 144th product. That device doesn't convert. It's a digital library, but it doesn't convert. The 144th product actually does have a digital-analog converter in it. It receives digital music, which is one way to make it work. You can make it work by either doing... Yeah, but it doesn't self-convert. So you're going to wirelessly... Put the information into the device, and the device makes the conversion. The device does the conversion, right. That's correct. Now, as I understand one theme from the red brief, it was interface, interface unit. The best understanding of those terms, based in the spec and the claim structure, is that it has to do some kind of conversion, some kind of conversion of a signal from coming out of one device so that it can be received by a second device. So there's no requirement for that. But what if there is? Then what happens to you? The construction the district court adopted actually only requires one conversion going one way, but not a conversion going the other way. It just requires transmitting the digital control commands, going in the other direction. The only evidence that was introduced on that point was one dictionary definition that said that it may require conversion. It didn't even say it must. So there wasn't any evidence that the term interface by itself had developed a meaning in the art, and the prosecution confirms that in connection with the later citation of the Cataoka reference. Unless we read the spec to be consistent with that dictionary definition that was being used. And so my question is, if it's true that interface and interface unit requires some kind of conversion of data or signal to a different form, different format, so that the signal and data coming from the first device can be properly received by the second device, what happens to your case? So if it turns out that interface is construed to include a digital analog converter, we would look at the second claim construction issue, which is the interface unit device module construction. I think you better get there. You're running out of time. So that issue... I'm sorry, do you have a question? No, I have a question. So those terms, the interface unit module device, there's nothing inherent in those terms that require that they be singular, that they be singularly physical. But that's what the district court eventually ended up with its construction. There are many cases from this court, including Textron, that talk about where a component can be made up of multiple pieces. And the claim... Your theory is that interface unit, the unit can be distributed between, I guess, the speaker system, the computer slash iPhone, and then... Pieces in the middle? I won't call that an interface. So there's a connector in the middle, there's the iPod, which includes the D-to-A converter, and then there's the speaker system. And the three of them are all together, and they comprise the interface, including a digital analog computer. Claim 37 supports this. Claim 37 says that the interface module need be at least partially integrated within the enclosure, suggesting that it can be elsewhere. It doesn't need to be in the enclosure of the speaker. It doesn't need to be entirely within it. Okay, one more time. The D-to-A converter in the iPhone, it's the connectors, and... There's a 30-pin connector. A 30-pin connector, and then what's the... Is there a third item that you want to designate as part of your interface? Part of the speaker system, which sends the remote control command into the iPod. And what piece is that? It's the control circuitry that transmits the command. The control circuitry, okay. So, but your interface still, under the district court's construction, still has to convert digital to analog. Right, and if... So even if the interface was made up of several parts, if it didn't convert, it still was in print, right? That's correct. So you have to... Well, if it doesn't... You have to prove that there is no requirement that there be conversion. No, if there is a requirement for conversion, the interface that has that conversion can be in the iPod. So we have to win on either, not both. I just have two quick questions on the induced infringement. Okay. To defeat the summary judgment, do you have to provide evidence of specific intent to infringe? Yes. Well, what evidence... Right, well, what evidence, and that's really the question, what evidence can you provide? So the evidence, very briefly, is several things. One is that SBI got Boza's infringement allegations in December in 2008. They continued with business as usual. They didn't stop selling their product. They continued selling the product, continued to teach the user how to make the combination, instructing, inducing the combination. They never got an infringement opinion at all. They eventually got, several months later... Well, they got a validity opinion. An invalid opinion. They don't need an infringement opinion. They got a validity opinion because you can't infringe an invalid patent. Right, they got an invalid opinion months later. And that's their whole argument, is we got, and your expert agreed, and said they got an opinion that said the patent is invalid, and they relied on it. So there's no evidence that they relied on it. The evidence of reliance is the alleged evidence of reliance. They went forward doing what they were doing in the face of a challenge that they were violating the law in doing so. That's exactly correct, and that supports finding a willful blindness as to the patent. They were either fools or they relied on something. Well, the testimony from the in-house attorney, Zalta, was that he offered the opinion to SDI's management. They declined to read it, and he doesn't know why. And that's in the appendix at 52-34-36. He also said that he's the in-house counsel. He's the one that's supposed to provide advice to the lead executives within the company, and he was the one that read and evaluated the opinion letter and believed it to be strong. He actually testified on that very point that he says, I guess I should have said, I really don't know why they didn't talk about reading the opinion, but I'm speculating that they count on me for these kinds of things. So that is admittedly speculation on his part. It's not evidence. It's speculation. He says that at 52-35. They hired Aaron Fox to come up with this letter to give them advice, right? Yes, they got an opinion. The opinion was not introduced in evidence. Why wasn't it introduced into evidence? Where is it? It's a good question. It wasn't our motion. You didn't ask for it, though. We had the opinion. They moved. They moved for summary judgment. They professed reliance on the opinion and didn't submit it into evidence. So the district court never had it. You didn't either. We didn't either. Submit it into evidence. We didn't. We had no obligation to do so. Our obligation is to respond. Your expert, as I recall their brief, your expert said that they agreed that they had an opinion of invalidity. Yes, he admitted that. He came to realize that they had an invalidity opinion. Is it because you had it in your possession already, a copy of it? You say you have it. Yes, we have it, yes. Everybody has it except us. Well, the district court never had it. It wasn't part of the record. So that's why it's not in the appendix. And the opinion is consistent with the results thus far at the patent office, at least on one of the theories of invalidity. So the result is the reasoning is not. And what the statement you just made now is the same error the district court made, drawing adverse inferences against Bowes as to the merits of the opinion. What the district court did here is essentially rule that as a matter of law, because they got an opinion without regard to its content, without regard to its merits, there can be no indirect infringement. Judge Young noted that there was a re-examination going on based on these exact same prior art references that were used in the opinion letter. Is that right? That's correct. And he also considered those very same... Do you know how many prior art references were in the invalidity opinion? Two. And how many? So those were the same ones that are relied on in the re-examination? Two of them are. The re-exam has more references. Right. There's even more grounds for rejection in the board decision. In the board decision, yes, that's not final yet. Did the board rely on the two that were in the invalidity opinion? Yes. But we don't know any of that because none of that's in the record. Well, what we don't know is we don't know anything about the reasoning of the opinion because that's not in the record. The district court filled in evidentiary gaps by making assumptions about the contents of the opinion, assuming that the opinion was consistent with the re-examination. Let me ask you this. If it was truly a sham opinion letter, then you probably could have introduced it into evidence and explained that the opinion letter was a sham, right? So they move for summary judgment. It's their burden to have a properly supported summary judgment motion. That's true. They say we have an opinion from a legitimate counsel which we believe is correct, and the opinion says that the patent is invalid. Now, doesn't that shift the burden of going forward to your side to point out that they're wrong in their allegation? I don't think so. Really? So they don't have... I mean, you didn't contest at all, right? We contested reliance on the opinion. We contested... But when you contest reliance on opinion, you say, well, you can't rely on the opinion because Eric Fox doesn't know what they're talking about or the lawyer didn't know what he was talking about. Doesn't there have to be an explanation about why you say that the reliance is misplaced? How is a court supposed to know if you stand up and you say why? I don't... They got a... Our expert agrees they got an opinion that says that the patent we're asserting is invalid, but they can't rely on that. That's essentially what you're saying. So the Supreme Court in Anderson v. Liberty Lobby said that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This motion for summary judgment wasn't supported. They didn't introduce the opinion. They asked to draw inferences from the opinion. They gave it to you, you asked for it, and they gave it to you. The plaintiff is you, right? We're the plaintiff, right. So you have to come forward with some evidence to defeat summary judgment? Is that what that clause is? This is coming from a case going the other way in terms of the motion. It wasn't our motion. It was their motion. So... There's no question that as a movement, they have to make a non-frivolous allegation that their motion is well-grounded. And they say, well, under the law, if a patent is invalid, we can't infringe it. A, we all agree with that. B, we have an opinion here from a counsel that we rely on that says the patent is invalid. And the opinion isn't introduced into evidence. The best inference that can be drawn from there is that the opinion is valid. Your argument is that the mere fact that they didn't introduce the invalidity opinion into evidence means they failed to meet their burden. Even though you have the opinion and they have the opinion, so you both know what the opinion says. That's correct. Because the district court judge doesn't have the opinion. The district court judge doesn't have the opinion. He doesn't know whether there's a trouble. So he drew inferences. He resolved disputed issues of fact based on drawing inferences about what was in this opinion without knowing what the opinion was. How about hypothetically today? Do they have a good faith belief that the patent's invalid? I could get into defects and the problems with the opinion, but that's not as part of the record. But I'm talking about the patent board, right? We now have had the expert administrative agency look at this patent in light of these very prior references that are in the opinion letter. They granted the re-exam. They rejected the claim. They did a final rejection. Went up to the board. The board took a look at all your arguments and affirmed the rejection. For other grounds, but then specifically based on Frank and his bandwidth. There are two particular limitations. Would there be good faith today? I can answer it this way. We don't know what their view is on these two limitations. There are two particular limitations that are missing from this combination. Right. That's your argument and that's the argument you're making. And it's the argument we're trying to convince the board of. Right. And if the board... That the metadata and the song files have to be located in the same storage disk. That was one of them. Yeah. Exactly. Exactly.  and beliefs are on those limitations. They're not in the references. Whether they have discussed this internally and have a real belief as opposed to a litigation position or a position in the submissions, we don't know that. Okay, but hypothetically, let's say that they are aware of the patent board decision. Somebody, let's say the in-house counsel, read the patent board decision and feels confident in the patent board decision. That panel of APJs got it right. Would that be sufficient evidence of good faith that the patent's invalid and therefore negate any intent of inducing to infringe the patent? Well, if they're not getting the full story about where the metadata is located and whether it's within the music files or not, then I would say that wouldn't be a competent opinion or a competent basis for that conclusion. Well, good faith doesn't require that you be correct. Good faith has never required that you be correct. Good faith means did you, as a reasonable person, have relent? So I think what the presiding judge was saying, well, gee whiz, if the law allows you to rely on the opinion of Aaron Fox, right, who's got a gun to hire, so to speak, then why shouldn't you be able to rely on an independent agency of the United States government that has reached a result? And why does the government, the agency of government doesn't have to be correct. I think that was the question that the chief judge was asking you, whether Judge Young erred as he did in putting a lot of emphasis on the fact that the patent office had taken the action it had. So what's wrong with Judge Young saying one of the reasons why I'm going to say that there's a good faith here is that their folks are relying on what the agency of the United States government did? What's wrong with that? So I just come back to, it's drawing inferences adversely on summary judgment, misapplying the summary judgment standard. This is an issue of, intent is an issue of fact. But that's not an inference. I mean, the patent office has taken an action. That's not an inference. And whether they relied on that in the face of the other countervailing evidence is an issue that should have been submitted to the jury. It's an intent issue. Intent has always been a key province for the jury. And it shouldn't have been taken away from them. Okay, thank you. You can see I'm way over. No, we'll give you a few minutes. Let's see, Mr. Lowery, is that? Lowery, yes. Lowery. Different from Lowery, by one letter. All right, let's see. Just to even things out, we'll let you run over your 15 minutes. Hopefully you won't need to go too much over 15. Very good. May it please the Court. Matt Lowery for SDI. At counsel table is Mr. Jenkins, representing co-defendants and appellees, DPI Imation Memorax. He would like to reserve the ability to pull the hook on me if he has a comment unique to that, but it's not expected. How come we don't have the opinion letter in the record? Well, neither party offered it. Right, how come you didn't offer it? There was no need to, because the way that it works in front of the district court judge, and I've seen Judge Young say this many times, she relies on the adversarial process. So we submit a statement of undisputed facts for purposes of summary judgment. But you have to support those statements. You can't just make them argument of counsel. Don't you have to cite to something in the record to support those? And that statement of undisputed facts does cite things in the record that do in fact refer to the opinion, and then it's the obligation of the party opposing summary judgment to point out what is in dispute and what is the evidence that puts it in dispute. And what those did not do is come in and endeavor in any way to support its burden of proof to attack what was in the interrogatory answer that was submitted in the other materials that said that they got the opinion, they relied on the opinion. And you can't just come in, or the cases say you can't just come in and say, well, I don't believe them. You need to offer something more. So one thing they could do is they could attack the qualifications of counsel. They didn't do that. They could attack the substance of the opinion. And there was characterizations of what was in the record. You're moving papers in the record? I'm sorry? Your summary judgment on this issue, moving papers are in our records, and you tell us exactly where? I believe so, and you put the moving papers on summary judgment including the statement of disputed facts. You're arguing that there was an actual allegation of reliance on the opinion. You just said that a minute ago. I believe so. You said it, and your other side disagrees with it. So that's why I'm asking you where the record is. Right. And it's in the interrogatory answers that were submitted. They attacked them in the briefing before this court as unverified, but they didn't suggest that was a problem in front of Judge Young. Or Judge Young would have fixed, either said it doesn't matter, which is what we think. We don't think that a separate verification is required. Or you could say it's not verified. Fix that. But that was not an argument that was made to the trial court. None of these arguments were presented as reasons why. And there's a very good reason. It is a competent opinion of counsel. It was from Aaron Fox. We know that. That's in the record. Well, there must have been an argument made that the SDI executives didn't personally read the ORM opinion. Yes, Your Honor. So there was an attack. They challenged that because the judge responded to that. Exactly. So where they did make the argument, the judge responded to that. Right?  It is not SDI's burden to prove that it was a competent opinion of counsel because we don't have the burden of proof at all on the intent issue. They do. They need to establish it. So we make our pointing out that they can't prove it. Part of that is pointing out certain things. So we know that there was an opinion. We know from the record that it was based on Frank and Vander Meulen. That's in the record and a part of the judge's decision. We know that there's an interrogatory answer that's describing the good faith basis.  And we know that they did not attack, they did not try to prove bad faith or lack of good intent based on anything related to the competence of the opinion or anything else about the opinion. I'm just trying to understand how things toggle back and forth. Yes, they have the burden ultimately to prove that you intended to induce infringement of their patent. Yes. At the same time, you are trying to prevail on summary judgment by establishing that you had good faith. Yes, Your Honor. In believing that the patent was invalid. So, I mean, in that respect, in that sub-point, the burden's on you, isn't it, to establish good faith if you want to win on summary judgment? No, the burden on us is to point out that they can't prove it, actually. And so when we point, and this is the summary judgment standard, and when we point out... You're mounting a defense by way of summary judgment. Mounting a way of... A defense. You're saying, you know, we're defending against the argument that we induced infringement. Yes. We can't induce infringement if we are not a bad fella and we're not a willful blindness. We have an excuse. Right, and what Judge Young said about that was, he said, so I'm looking at this as kind of like a bursting bubble sort of thing, and the bubble has been burst. They've put in enough for me to say, okay, what's your proof? But it's not a burden shifting. There's an analog with respect to conception dates and obviously where somebody makes a... An inventor has to make a production of evidence to show that they had conceived, and then actually it's the burden on the person attacking the patent to show that they didn't. The burden of proof does not shift. It's not an affirmative defense to say we relied on opinion of counsel. It is a response to an allegation. No, but on summary judgment you have to show there's no dispute, genuine dispute of material fact on whether you relied on it. Yes, Your Honor. And so if the other side comes in and suggests that there's evidence that you didn't rely on it, or it wasn't a good opinion, or that you were willfully blind, then doesn't that create a genuine issue of material fact that you go to the jury? It could, Your Honor, but that's exactly what did not happen here. They did not come in and say it was not a confident opinion. They did not come in and say that they gave them false assumptions to rely on. They did not come in and say it's unqualified counsel. They did not come in and give any evidence from which a juror could infer that bad intent. It was absent in the record based on those undisputed facts that were in the record, which is that they did get an opinion. It was based on Frank and Vandermeul, and the Patent Office actually agreed not that long after. And that's kind of all the evidence that is. So the only evidence of bad intent that both offers, their burden of proof, the only evidence they offer is we told them about the patent and three months later they told us it was invalid. What if the PTO did not grant the re-exam based on the prior art? Then would you be in trouble? Because then all we would know is that an opinion letter existed. Possibly. What would happen in that hypothetical circumstance is there would be an opinion, there would be a question, was it reasonably relied on until the board acted? Once the board acted, one might say, well, it's not reasonable to rely on that anymore, and they would either need to reassess their view, maybe have something else. But yeah, it would be obviously a problem if they have an opinion and it turns out the board doesn't agree with them. Obviously that didn't happen here. Well, if you look at the judge's decision at page 28, it's actually at page 72 in the record. In the footnote he's talking there about the expert witness on their side. And the judge seems to be quite impressed with the fact that Bose understood that your client had an invalidity opinion and believed that it was invalid. Yes, you're right. And there's no underlying, what you're saying there's no underlying, oh, well, but we don't think the opinion's any good. That's correct, Your Honor. As a predicate for their damages theories, they took it as an assumption and a given, after presumably their expert had access to the opinion as well, that SDI genuinely believed that the patent was invalid. Can you just explain, maybe, Dan, why you didn't put in the opinion letter? It wasn't, there was no reason for it, other than that it was not thought to be necessary. And a lot of times the more kind of junk you put in front of a judge, if it's not necessary, they don't appreciate it. So we had the statement of undisputed facts, I think, in there that refers to that. And we had the materials that I... Did the judge know that the other side had the opinion letter? Yes, I believe he did. And, in fact, not only did they have the opinion letter... And I know you're going to say that, but on what do you premise your belief? On what do we... Well, there was questioning about it. I think that if we hadn't produced it, we wouldn't be able to rely on it. So he would have, I believe, known that. I know that, in fact, the person who wrote the opinion was deposed. I can't remember Mr. Orem, who wrote the opinion, was deposed. I can't remember if there was motion practice in front of the judge on that. I don't think anybody has ever suggested that the judge didn't know the opinion had been produced. Had the opinion not been produced, it would have been a great ground for attacking or purporting to rely on it. And, again, Judge Young relies on the adversarial process. If we hadn't produced it, he would expect the other side to say, they can't do that, they haven't produced it. If I may, Your Honor, there's a couple questions that were asked that I want to be sure that there's an answer to, but I'm happy to go further on the intent question. For the first... Are you going to argue the merits, or is the other side going to argue the merits? On the interface? On the claim construction issue. I'm going to argue that as well, Your Honor. So, Judge Chen asked about the proceedings in front of the Patent Office, and there were developments post the filing of our brief, so it's not actually been, the court hasn't been informed of it, but there was a first board decision that affirmed the rejections. One of them was slightly modified. BOSE could have appealed it. They chose not to. They said, go back to the examiner. It went back. The examiner affirmed it in August of 2012. I'm sorry, in November. The first board decision was in 2012. The second board decision was in 2013. That's correct, and that's post our brief. Affirming all the rejections. Yes, Your Honor. BOSE has filed a request for reconsideration at the Patent Board, which is still pending. In October of 2013, response filed in November. That's exactly right. That is the current status. Judge Clevenger had asked, are there other uses of the word interface in the specification? And the answer is, it's in the footnote in our brief, there's a reference to a network interface card. Not relevant here, other than that it does translate from the network to the personal computer. User interface, also not especially relevant here, though it does translate what a human can do into what the machine understands. And then there's one that I think is quite illuminating, and they highlight it actually in the reply brief, is reference to interface connector, as though that means the connector is the interface. When I think, when Your Honors look at the specification, you'll see that is the connector for the interface. It connects to the interface. It is not the interface, and that's exactly the way that it's used in the specification. There was this issue, I think it was also, Your Honor, Judge Chen, about what happened with the contention that it's a connection. So what was presented to Judge Young was a connection versus the construction that Judge Young adopted. And there's this request for rehearing issue, and I just want to be clear on the timing for that. So... Hypothetically, if we disagree with both of your  do you have another proposed construction for us of interface that's not simply a connector, but doesn't require the DA converter? No, I don't, Your Honor, and I would respectfully submit that I shouldn't, because claim construction shouldn't begin anew at the appellate level. So if we don't agree that it requires a DA converter, we should just send it back to the district court? Rather, I think what Your Honor should look at is, is it a connector, or is it what Judge Young held? Is it something that... Well, it's not a binary choice, though. If we don't think either of those is correct, there must be something else out there. Not that anyone has actually ever proposed. But you agree, right, that if we think that neither term is correct claim construction, just because those are the only two proposed, we don't have to adopt one of them? I think that... Again, Your Honor, I don't think that the court should take up the claim construction. If Your Honor's determined, I suppose, that it's error in all regards, it could be remanded for further determination. So we send it back to Judge Young, and you know Judge Young. You've heard him, probably, when he said to Judge Young, you know something, you were just wrong, but try to figure it out again, and we give him no help. That doesn't seem like a prudent thing to do. But I would also respectfully submit that interpreting new, I mean, we don't even have a construction in the briefing. There's almost a due process question. If Your Honors were to adopt a construction that's never been presented, I've never had a chance to be heard of. Well, I'm not suggesting that we're going to tell the district court, this is the construction, you follow what we said, but at least give him some guidance on why we think he was wrong and where he could go to correct it. Again, I understand your point. It isn't for us to make a claim construction for the first time on appeal, but I would think that the district court judge would be very frustrated if we just say, we don't like either of the parties' construction, so start over again. Which is why I believe that the issue before, the issue before, Your Honor, was given what Judge Young was presented, not arguments that he wasn't presented, but given what Judge Young was presented, did he issue the correct ruling? But claim construction is a question of law, right? It is, but that doesn't mean that... So if he's erred as a matter of law, I mean, I can't believe that you're arguing that we're bound to select either one, either your construction or the other party's construction. If we think that neither of those are legally correct, then somebody has to, as a matter of law, come up with the correct one. Again, in the abstract, so to decide a legal issue that wasn't argued to the court, I would respectfully submit, isn't what the appellate function is, unless it's a question of standing. Are you arguing that the other side waived any other construction except the one they proposed? In fact, I do believe that they did. But they definitely argue that yours is incorrect. If we agree that yours is incorrect, then where are we left? I believe that as the arguments that were presented were, we are incorrect, and a basis for that, or the primary basis, if not the only is, it should be a connection. Well, in reconsideration, those said, well, we've thought about it. We earlier said to you that interface is just a connector. Now we say it's a connector plus. It's a connector plus something. And the other side says, well, it's a connector plus, but the plus is digital to analog conversion, conversion authority. And so they say, no, it's not that. It's just a connection plus. And the plus simply is that it moves signals through a switch. Is that, in essence, what they're saying now? Okay, so there are two issues with that, Your Honor. The first is, they don't actually say connector plus. They say connector using different words. It's something that simply passes signals. That's just a connector. So it really isn't a different argument. The second part of that is, Judge Young in November of 2011 gave his Markman decision from the bench as a tentative, and in December of 2011 gave his order. Fact discovery closed. Thirty-five depositions and five expert reports later, fact discovery's closed. We file our summary judgment motion, and after we file our summary judgment motion on January 19th, they request reconsideration on the Markman ruling. The standard of review on denial of a request for rehearing is abuse of discretion, and there's not even a whiff of a notion that Judge Young abused his discretion in denying the request for rehearing. So I would suggest that that's not actually something that was fairly presented to Judge Young in the first instance. But more important, the interface claim construction is correct. If Your Honors look at it, it says, what does it mean to operably connect an interface, to operably connect a computer and an analog speaker? You need to do the translation from digital to analog. If you look at the specification, and I think this is probably the single most... Can you point to me anywhere in the claim language that it says an interface requires a digital-analog converter? Where it says interface, because the proper construction of interface requires it. Do the words digital-to-analog converter appear in any of the claim language? They do not appear... The words do not appear in the claim language. And the common definition of interface, does it normally require a digital-analog converter? It requires a form of translation, which in this context requires a digital-analog converter. Well, is that the only common definition? Does an interface always require translation? We believe that it does, and in this context requires translation from computer to speaker, and we actually cite IEEE dictionary definitions in our brief that gives this translation component. I guess the question is, hypothetically, what if we looked at the spec, and in light of the spec, the context, we saw that the digital-analog converter is an exemplary embodiment, but the message to take away is that, yes, there is some kind of conversion that needs to take place so that one device can talk to a second device. And that's really the best understanding of interface, an interface unit, but it doesn't have to just be a digital-analog converter. Well, I think it actually needs to be a digital-analog converter and more because you also have to pass the commands between the remote. Right. Do you understand what my question is? Yes. That it's not so narrow as to have to be a digital-analog converter because that feels just a little bit too much like importing the embodiment into the claim. But nevertheless, based on the context of the spec and the way figures one and figures two are kind of compared off against each other, there has to be something more than a connector. It has to be some form of conversion of a signal. And that's the trick, Your Honor, because in the context, Philip says look at the specification. In the context of this patent, there is nothing beyond the connector and the conversion from a digital music file to something that can be amplified without a sound. Right, but I'm just saying for hypothetical purposes, I am not agreeing completely with either party's construction. Well, then, Your Honor, there is... Do you understand the version of a construction I've articulated? And the problem I'm having is... Yes or no. Do you understand? Yes, Your Honor. Okay. And the problem that I'm having is that it's a hypothetical for which there's an underlying untrue assumption, which is there is some place to land that's not connector or digital-to-analog conversion. And there is no place to land that's not one of those two. Bose has never articulated a theory. So if we disagree that it requires a digital-to-analog converter, then are we forced to go back to connector? I don't know what other construction there would be. So are you conceding that if we agree that the claim construction was wrong and it doesn't require a digital-to-analog converter, that Bose's prior definition of connector is the correct one? That there's not something in between? I would need to brief it to really be able to articulate it. But you need either a digital-analog converter or something within the interface that is performing digital-to-analog conversion. But that's the only translation that's meaningful in this context, is digital... Is there anything in the specification that suggests that the patent is... The invention is limited to the receipt of digital music files by the speaker? You said that a moment ago. Yeah, so in the specification, it talks about Figure 1, and it doesn't ever refer to an interface between the computer... I know what you mean. I'm talking about... If the patent had started off saying, we're dealing with a problem here of a lot of digital music files that are out there in the world, and wouldn't it be cool if you had a way to take all those digital files, regardless of the source, and be able to put them into a speaker system that needs an analog system? I mean, that is part of it. The invention is actually narrower than that. Or does it say something like... Because that would color, in my mind, the invention to say what they're trying to do is obviously to take digital music and play it in an analog system. And you couldn't do that, as I said earlier, in the real world without a converter. But where does the patent state that? Well, I would say it's actually inherent in the specification. I mean, all of the digital music files and the metadata and the sorting. Going back to the specification, but where... I mean, I'm looking at Representative Claim 35. Where does it talk about... anywhere about digital music being converted to analog? Thank you. So there is the storage device, and the metadata is all digital information on the audio source device. Why is it happening? Why couldn't it be storing audio music? I mean, not digital, but... Analog. Analog. It's just... It's a much broader construction than I've ever heard proposed before. I understand. I'm just saying, why couldn't it? That's just not what this patent is about. I mean, I don't think one can read this patent and think that it's not about... I don't think anybody would suggest that it's about something broader than that. But if I could return to the specification, what makes clear on the interface part is they say figure one... They say figure two, which shows the interface unit separately. The elements are the same as figure one with some exceptions. It says the sound card is not needed. The stereo jack, the audio system connector are replaced by a bus interface connector which connects to an interface unit. So they say figure one, you have this system. Figure two is similar with this difference. There's an interface in figure two. And the interface in figure two... So there's an interface unit. That's correct. An interface connector that connects to an interface unit. And that's what's performing the translation from digital to analog. And they're saying, here's the exception. In figure one, the computer's doing everything. And you've got a speaker. In figure two, similar components. You've got the computer. Why isn't it just as proper to read figure one as having an interface that doesn't include a digital analog converter because that's in the sound card? Because it's not described that way. That's not the way that the patent uses the term. Well, yeah, because they don't use the word interface. But that doesn't mean that they... I mean, you clearly haven't argued any kind of estoppel here. And the district court didn't find that. No, but... I'm having a hard time with this because you're reading embodiment one out of the patent. Well, and that's because they had claims which originally covered both. And then they amended them to include interface unit, right, unit, unitary interface unit, which refers to the figure two and the figure three embodiments. And they did that. And then in subsequent applications, they filed a continuation. And they're seeking broader claims that don't require an interface unit device or module. So in that sense, this not covering figure one, not covering a disclosed embodiment is unremarkable. Is your argument about the amendment based upon all these claims that had, in a couple places, had dependent claims talking about a digital audio converter? No, yeah. What is it about? Because I have a really hard time following that argument about their amendments and the like. Okay, well, and that's deliberate because what those typically does is rather than have a straightforward amendment, we'll cancel things out and put in new things. So they're hard to follow. Right, but you're making the argument that their amendments got rid of embodiment one. I don't see that. There was a claim one that did not recite interface unit or anything like that. And where was that? The application as filed. And that claim was subsequently canceled and new claims were put in which were, include, where interface and interface unit were added. Now, in continuing, and it's not uncommon, you know, you have an issue or whatnot, you take a narrower claim and you pursue a broader one in a continuation application. That's exactly what happened here. So the fact that it doesn't cover figure one simply means they chose to focus on figure two, the only thing where interface unit appears, and in the future they're broadening out to figure one. I think we have your argument. Thanks very much. Thank you, Your Honor. All right. Let's give both five minutes. Thank you, Your Honor. So could you respond to that last point? Because I'm still fuzzy on this whole amendment issue. Is this old claim one that you canceled, I understand that, let me think, there was a bunch of claims, the examiner grouped them into pick one group. Is he talking about the claim one from the very top group that you choose not to select? So the original application as filed had claims one and two, and a number of other claims. Claim two had the term interface device, and what it said was, it said claim two had an interface device for connecting said computer and said connector, said interface device comprising a digital analog converter. So that was original claim two. It was never prosecuted. There was a restriction requirement. Claims were canceled. Closest we ever got to talking about actually having a, which is a digital analog converter. And that's correct. And claim two is instructive because it says said interface device comprising a digital analog converter. What was there, drawing associated with that claim two? No. In that application? Well, it's the same application. So it's figure two they're talking about. That would have been drawn to the, right, the interface unit in figure two. Number 54 is part of the specification. Sure, it is. As originally filed. That we can use to construe claims. Yes, I agree. And it's very instructive because it says that said interface device comprising a digital analog converter. So it's narrowing interface device. If interface device inherently required a digital analog converter, there'd be no need to say said interface device comprising. Well, interface device wasn't recited in claim one, right? Right. It's just dependent claim two. Claim two adds. Defining what an interface device is. Not defining. So claim two adds two limitations to claim one. It adds an interface device and then it has a further limitation on the structure of the interface device. And it shows us that when the applicant wanted to limit a claim to one that includes an interface device, he knew how to do it by including those words interface device in the claim. So the district court treated claim two as definitional. But it wasn't defining anything. It says interface device comprising a digital analog converter. That's like what this court said in Phillips about steel baffles. So saying steel baffles implies, and there are other cases like that, but implies that the term baffles alone need not be made of steel. So the digital analog converter is an additional limitation in original claim two. It wasn't definitional. There's also other intrinsic evidence. The dependent claims 24 and 29, both of which describe a system in which the music has been converted to analog form before it gets to the interface. So for those claims, the interface need not include a digital analog converter. That would be redundant. But in the prosecution history for claim 24, when you were citing support in the record in the spec for that particular new claim limitation, you were pointing to the digital analog converter in the interface unit 54 as support for that proposition. Well, that was an obvious error because the claim is directed to an audio source device. Well, the part of the spec that was cited has nothing to do with an audio source device. And there is support for the claim otherwise, which comes out of figure one. The elephant in the room is the Nautilus case, which is going to be argued in a Supreme Court later this term, right? We don't have that issue in front of us, but when you have a claim like this one where you say, well, you know, maybe yes, maybe no. You use all the conventional tools of claim construction. Your adversary has some pretty good arguments. You have some pretty good arguments. So if we go through the tools of claim construction, we have the actual language of the claim itself. The claim sets forth functional requirements for what the interface must do. That doesn't involve conversion from digital analog form. We have the specification. The specification describes two embodiments. It doesn't characterize figure one as being the prior art or the problem or anything like that. There's nothing in the specification that suggests that figure one is not intended to be included. We have the prosecution history. We have an amendment which is not to add an interface for the purpose of doing anything, but it's to add a remote control. And the interface is just facilitating the connection with the remote control. This is confirmed with the interview summary that was from the interview the same day that the amendment was filed. Nothing at all about the interface in that discussion. We also have the dependent claims 24 and 29, extrinsic evidence. Intrinsic evidence. We also have extrinsic evidence from the dictionary definitions. Counsel pointed to his definition. At most it says that it may involve code format speed or other changes as required. It doesn't say interface must. And there are other dictionary definitions which say that it's simply a shared boundary between two objects. So the type of thing that would facilitate the communication. In terms of the reference to the Bose expert witness, Dansky, he was a damages witness. He was a damages expert. He testified, I've come to realize that SDI had an invalidity opinion, and so it didn't believe that the patent was going to be valid. He had no evidence for their actual belief. He was speculating about that. Very dangerous, right? It was. It was dangerous, but he wasn't an expert on intent. You can't have an expert on intent. Okay. Thank you very much.